# Exhibit 1

POLICY NUMBER: HDG.MPL.22.6JS2-FDWH

**STATE NATIONAL INSURANCE COMPANY, INC.**
(a stock insurance company)
**1900 L Don Dodson Dr.**
**Bedford, Texas 76021**
**(800) 877-4567**

**MPL 10-0006 04 21**



# Technology Executive Protection Policy

Including Directors & Officers Liability,

Employment Practices Liability,

Fiduciary Liability,

Technology Professional Liability,

Cyber Coverage

Common Declarations

Vouch Insurance                                          State National Insurance Company, Inc.



**Technology Executive Protection
Policy**

MPL 10-0006 04 21

## Common Declarations

**NOTICE**:

Each **Liability Coverage** included in this **Policy** provides coverage only on a "claims made" basis for **Claims** first made or deemed first made during the **Policy Period**.  No coverage is provided for a **Claim** first made after the **Policy Period** except to the extent an **Extended Reporting Period** is available and applies to that **Claim**.  Retentions apply to **Defense Costs**, and any **Defense Costs** above the applicable Retention will apply to reduce the applicable limit or sub-limit of liability which might otherwise apply to other **Loss**, such as settlements or judgments.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS **POLICY**, **WE** AGREE WITH **YOU** TO PROVIDE THE INSURANCE AS STATED IN THIS **POLICY**.

PLEASE READ THIS **POLICY** CAREFULLY.

| **Named Insured** and Mailing Address<br><br>SearchFinder LLC<br>695 Anderson Ave<br>1101<br>Cliffside Park, NJ 07010 | Producer Name and Address<br><br>Vouch Insurance Services, LLC<br>3739 Balboa St #1073<br>San Francisco, CA  94121<br>Producer No. 19039391 |
|---|---|
| **Policy Period:** | From: 11-09-2022    To: 11-09-2023<br><br>At 12:01 AM., Standard time at your mailing address shown above. |
| **Professional Services:** | Professional Services: Those services that You provide, or fail to provide, to others for a fee, service, or other remuneration, unless otherwise excluded in this policy. |

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES:

Coverages Purchased:

| | |
|---|---|
| Directors and Officers Liability | ☒ |
| Employment Practices Liability | ☐ |
| Fiduciary Liability | ☐ |
| Technology Professional Liability | ☐ |
| Cyber Coverage | ☐ |

A. Limit(s) of Liability:

Policy Aggregate Limit of Liability (all Coverages): $  5,000,000

Shared Limit of Liability: $ 5,000,000

Cyber Coverage Aggregate Limit of Liability: $ Not Applicable

B. **Coverage** Summary – **Liability Coverage**:

**Technology Executive Protection Policy**

MPL 10-0006 04 21

| Coverage | Coverage Limit of Liability (including Defense Costs): | Subject To: | Retention(s) (each Claim or Interrelated Claims): |
|---|---|---|---|
| Directors and Officers Liability | $ 5,000,000 | ☐ Separate Limit<br>☒ Shared Limit | $ 75,000 |
| Employment Practices Liability | $ Not Applicable | ☐ Separate Limit<br>☐ Shared Limit | $ Not Applicable |
| Fiduciary Liability | $ Not Applicable | ☐ Separate Limit<br>☐ Shared Limit | $ Not Applicable |
| Technology Professional Liability | $ Not Applicable | ☐ Separate Limit<br>☐ Shared Limit | $ Not Applicable |
| Cyber Coverage Agreement A.1. Data Liability | $ Not Applicable | ☐ Separate Limit<br>☐ Shared Limit | $ Not Applicable |

**C. Coverage Summary – Data Incident Costs:**

| Coverage | Coverage Limit: | Retention(s): |
|---|---|---|
| Cyber Coverage<br>Agreement A.2. **Data Incident Costs** | $ Not Applicable | $ Not Applicable each **Data Incident** (other than **System Disruption**)<br><br>Waiting Period Retention:<br> Not Applicable  Hours |

**D. Sub-limits of Liability (subject to Coverage Limits, Policy Aggregate Limit and Shared Limit of Liability):**

| | | |
|---|---|---|
| Directors and Officers Liability: | All **Investigation Costs**:<br>All **Loss** resulting from TCPA Claims: | $ 25,000<br>$ 100,000 |
| Fiduciary Liability: | All HIPAA, 502(c) and PPACA Penalties:<br>Voluntary Compliance Payments: | $ Not Applicable<br>$ Not Applicable |

**Technology Executive Protection
Policy**

MPL 10-0006 04 21

| Technology Professional Liability: | All **Reputational Harm** from all **Claims**: | $ <u>Not Applicable</u> |
|---|---|---|
| Cyber Coverage: | All **Assessments** from all **PCI Violations**: | $ <u>Not Applicable</u> |
| | All **Fraud Loss** and related **Breach Response Costs** from all **Cyber Crime**: | $ <u>Not Applicable</u> |
| | All **Telecommunication Service Loss** and related **Breach Response Costs** from all **Telecommunication Fraud**: | $ <u>Not Applicable</u> |
| | All **Loss** from all **Regulatory Proceedings**: | $ <u>Not Applicable</u> |
| | All **Reputational Harm** from all **Data Incidents** and **Claims** | $ <u>Not Applicable</u> |

E. **Prior Knowledge** Date: 2022-11-09

F. Premium shown is payable: **$ 9,330** at inception.

G. **Extended Reporting Period**:

| | Term (Months) | Premium |
|---|---|---|
| Option 1 | 12 | 100% of annual premium |
| Option 2 | 36 | 225% of annual premium |
| Option 3 | 72 | 300% of annual premium |

| Notices to Insurer: | claims@vouch.us<br>Vouch Insurance Services, LLC<br>3739 Balboa St #1073<br>San Francisco , CA 94121<br>www.vouch.us | Notice of **Data Incident**: | cyber-response@vouch.us<br>(877) 777-9884 |
|---|---|---|---|

Forms (Show Numbers):

| MPL 10-0006 04 21 | Common Declarations |
|---|---|
| SNC-IL-0719-OFAC-N | U.S. Treasury Department's Office of Foreign Assets Control (\"OFAC\") Advisory Notice to Policyholders |
| SNC-IL-0719-TOES-E | Trade or Economic Sanctions |

*Revision Date: same as policy effective date*    Vouch Insurance, © 2021    *3*

**Technology Executive Protection
Policy**

**MPL 10-0006 04 21**

| | |
|---|---|
| MPL 10-0000 04 21 | Common Terms and Conditions |
| MPL 20-0001 04 21 | Directors & Officers Liability Coverage |
| MPL 10-1028 04 21 | Certified Acts of Terrorism Coverage Exclusion |
| MPL 10-1038 04 21 | Amend Definition of Loss - Remove Punitive Damages |
| MPL 10-1081 04 21 | Modification to Insured v. Insured Exclusion |
| MPL 10-1091 04 21 | Specified Activity Exclusion - Crypto |
| MPL 10-1093 04 21 | Deletion of Securities Claim Coverage (Public) |
| MPL 20-1002 04 21 | Defense Costs for IP Claims (Subject to Sub-limit and Co-insurance) |
| MPL 20-1033 04 21 | Cap Table Disputes Extension |
| MPL 20-1050 04 21 | Modification to Coverage A.4. |
| MPL 10-1064 04 21 | NJ Amendatory |
| MPL 10-1047 04 21 | Terrorism Notice (Coverage Included) |
| MPL 10-9000 04 21 | Application For MPL Coverage |

**Technology Executive Protection
Policy**

**MPL 10-0006 04 21**

**Technology Executive Protection
Policy**

**MPL 10-0006 04 21**



IN WITNESS WHEREOF, **We** have caused this **Policy** to be signed by its President and Secretary, and countersigned, if required, by **Our** duly authorized agent.

DATE: 2022-11-09

_____
Authorized Signature

Authorized Representative of the Insurance Company Named in these Declarations:

_____
David Cleff, Secretary

_____
Matthew Freeman, President

**INTERLINE**

# STATE NATIONAL INSURANCE COMPANY, INC.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SNC-IL-0719-OFAC-N

**INTERLINE**

# STATE NATIONAL INSURANCE COMPANY, INC.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited, to those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).


All other terms and conditions remain unchanged.

SNC-IL-0719-TOES-E

**Technology Executive Protection Policy**

**MPL 10-0000 04 21**



# Common Terms and Conditions

Vouch Insurance **State National Insurance Company, Inc.**



**Technology Executive Protection Policy**

MPL 10-0000 04 21

# Common Terms and Conditions

**NOTICE:**

This **Policy** provides coverage only on a "claims made" basis for **Claims** first made or deemed first made during the **Policy Period**. No coverage is provided for a **Claim** first made after the **Policy Period** except to the extent an **Extended Reporting Period** is available and applies to that **Claim**. Retentions apply to **Defense Costs**, and any **Defense Costs** above the applicable Retention will apply to reduce the applicable limit or sub-limit of liability which might otherwise apply to other **Loss**, such as settlements or judgments.

**PLEASE READ THIS POLICY CAREFULLY.**

**Common Terms and Conditions**

This **Policy** is a legal contract between **You** (referred to in this **Policy** as the **Insured** or **Your**) and the insurance company named in the Declarations (referred to in this **Policy** as **We**, **Us** or **Our**). In consideration of the premium paid and in reliance on the **Application** and subject to this **Policy**'s terms, conditions and limitations, **You** and **We** agree as set forth below.

**A. Application of Common Terms**

Except when otherwise stated in a **Coverage**, the Common Terms and Conditions apply to each **Coverage**. A term or provision in a **Coverage** that conflicts with a term or provision in the Common Terms and Conditions will control with respect to that **Coverage**, and a term or provision in a **Coverage** will not apply to any other **Coverage**. Any word appearing in boldface has the meaning stated in the Common Terms and Conditions or the applicable **Coverage**.

**B. Common Definitions**

**1.** **Application** means the application **You** submit for this **Policy**, any other information **You** provide with the application and any filing with the Securities and Exchange Commission by the **Company** within twelve (12) months before the date of such application. **Application** includes all applications (and information provided therewith) that **You** submitted for all prior policies that **We** issued to **You**, of which this **Policy** is a renewal, replacement or successor.

**2.** **Claim** means:

a. a written or verbal assertion of liability or demand for monetary or non-monetary relief;

b. a civil proceeding commenced by the service of a complaint or similar pleading, including any appeal therefrom;

c. an arbitration, mediation or similar alternative dispute resolution proceeding in which **You** are obligated to participate or agree to participate with **Our** written consent, including any appeal therefrom;

d. a criminal proceeding commenced by the filing of charges, including any appeal therefrom;

e. a formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, including any appeal therefrom; or

**Technology Executive Protection Policy**

MPL 10-0000 04 21

      f.      any of the following that **You** choose to report to **Us** as a **Claim**:

        (1)      a written request to toll any applicable statute of limitations before the commencement of any judicial, administrative, regulatory or alternative dispute resolution proceeding;

        (2)      solely as to Fiduciary Liability Coverage, a fact-finding investigation by the United States Department of Labor, Pension Benefit Guaranty Corporation or any similar foreign governmental agency that does not allege a **Wrongful Act**; or

        (3)      solely as to Fiduciary Liability Coverage, an appeal of an adverse benefits determination by a **Plan** participant or beneficiary pursuant to the United States Department of Labor's reasonable claims procedures under 29 CFR 2560.503-1(h).

3.      **Company** means the **Named Insured** and/or any **Subsidiary** and, in the event of the **Insolvency** of the **Named Insured** or any **Subsidiary**, any resulting debtor in possession or receiver (or foreign equivalent).

4.      **Control** means:

      a.      as to any partnership, limited liability company, corporation or other entity, the **Named Insured's** ownership, whether direct or indirect, of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint, or exercise majority control over its directors, trustees, managers, board of managers or natural person general partners (or any functional equivalent); or

      b.      as to any joint venture, the **Named Insured's** ownership, whether direct or indirect, of fifty percent (50%) or more of the issued and outstanding voting rights or securities and whose management and operations the **Named Insured** controls  by written agreement, by-law, charter, operating agreement or similar document, or the right to elect, appoint or designate a majority of the entity's management committee.

5.      **Coverage** means any **Liability Coverage** and Insuring Agreement A.2. and A.3. of the Cyber Coverage, if Cyber Coverage is marked as purchased in the Declarations:

6.      **Data Incident** and **Costs** have the meanings by which these terms are defined in the Cyber Coverage.

7.      **Defense Costs** means:

      a.      any reasonable and necessary legal fees, costs and expenses incurred in investigating, defending or appealing any **Claim**, including the costs of an appeal bond, attachment bond or similar bond and, with respect to Fiduciary Liability Coverage, the cost of an independent fiduciary bond or similar bond; however, **We** have no obligation to apply for or furnish any bond; and

      b.      any reasonable and necessary legal fees, costs and expenses incurred by an **Insured Person** in lawfully opposing, challenging, resisting or defending against any request for or any effort to obtain extradition of that **Insured Person**, or appealing any order or other grant of extradition of that **Insured Person**.

**Technology Executive Protection Policy**

**Defense Costs** does not include salaries, wages, overhead or benefit expenses associated with any **Insured Person**.

8.    **Domestic Partner** means any natural person qualifying as a domestic partner under any applicable federal, state or local law or a formal program established by the **Company**.

9.    **Employee** means any natural person whose labor or service is engaged and directed by the Company including any permanent, temporary, leased, or volunteer worker. Employee does not mean a director or officer of the **Company** or an independent contractor for **Company**.

10.   **Indemnifiable Loss** means any **Loss** the **Company** (or with respect to the Fiduciary Liability Coverage, any **Plan**) is permitted or required to indemnify an **Insured Person**.

11.   **Insolvency** means the appointment of a creditors' committee, a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate any **Company** or any **Company** becoming a debtor in possession.

12.   **Insureds** (or **You**) means the **Company**, all **Insured Person**s and, with respect to Fiduciary Liability Coverage, all **Plans**.

13.   **Insured Persons** has the meaning by which that term is defined in each **Coverage** or any endorsement.

14.   **Interrelated Claims** means all **Claims** involving the same **Wrongful Act** or **Interrelated Wrongful Acts**.

15.   **Interrelated Wrongful Acts** means all **Wrongful Act**s having a common nexus, or causally connected by any fact, circumstance, situation, event or decision.

16.   **Liability Coverage** means any of the following **Coverages** marked as purchased in the Declarations:

   a.    Directors and Officers Liability Coverage;

   b.    Employment Practices Liability Coverage;

   c.    Fiduciary Liability Coverage;

   d.    Technology Professional Liability Coverage; and

   e.    Insuring Agreement A.1. of the Cyber Coverage.

17.   **Loss** means compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements, judgments (including pre-judgment and post-judgment interest) and **Defense Costs**. **Loss** does not include :

   a.    any relief or redress in any form other than money damages, including the cost to comply with such relief or redress; or

   b.    any matter which may be deemed uninsurable under the law pursuant to which this **Policy** will be construed.

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

In determining the enforceability of coverage for punitive or exemplary damages or the multiplied portion of any multiplied damage award, the applicable law which most favors coverage will be applied.

18.   **Named Insured** means the entity named as such in the Declarations.

19.   **Policy Period** means the period from this **Policy's** inception to this **Policy's** expiration as indicated in the Declarations, or its earlier cancellation (if applicable).

20.   **Policy** means the Common Terms and Conditions, the Declarations, all **Coverages** indicated as purchased in the Declarations and all attached endorsements. The terms, conditions and limitations of this **Policy** can be waived or changed only by written endorsement.

21.   **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, including any materials to be recycled, reconditioned or reclaimed.

22.   **Public Relations Costs** means the reasonable and necessary costs of consulting with a public relations firm to minimize or otherwise respond to **Reputational Harm**. **Public Relations Costs** do not include the cost to conduct any promotional events, or the value of any giveaways, credits or coupons provided, to minimize **Reputational Harm**.

23.   **Reputational Harm** has the meaning by which that term is defined in each **Coverage** or any endorsement.

24.   **Senior Executive** means any Chief Financial Officer, Chief Executive Officer, General Counsel, management committee member, member of the Board of Managers or general partner of the **Company**.

25.   **Subsidiary** means any entity over which the **Named Insured** has **Control**:

    a.   on or before this **Policy's** inception; or

    b.   after this **Policy's** inception:

        (1)   if created or acquired by the **Named Insured** and the entity's total assets do not exceed fifty percent (50%) of the total consolidated assets of the **Named Insured** as of this **Policy's** inception; or

        (2)   if created or acquired by the **Named Insured** and the entity's total assets exceed fifty percent (50%) of the total consolidated assets of the **Named Insured** as of this **Policy's** inception; so long as the **Named Insured**, within ninety (90) days of the entity's creation or acquisition, provides **Us** with written notice and agrees to any premium adjustment and/or coverage revision that **We** require;

but any entity is only considered a **Subsidiary** while the **Named Insured** has **Control** over it.

**Subsidiary** also means any nonprofit entity while it is controlled by the **Named Insured**.

26.   **Takeover** means:

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

    a.    another person or entity, or group of persons or entities acting in concert, gaining control of the **Named Insured** through the ownership of more than fifty percent (50%) of the voting stock, securities or voting interests of the **Named Insured** or acquiring all or substantially all of the **Named Insured**'s assets; or

    b.    another person or entity assuming the **Named Insured's** responsibilities for the administration of, or as a fiduciary of, any **Plan** as defined in the Fiduciary Liability Coverage (other than through the **Named Insure's** engagement or employment of a third-party administrator or trustee).

**27.**    **Non-Indemnifiable Loss** means any **Loss** the **Company** (and with respect to the Fiduciary Liability Coverage, the **Plans**) is not permitted or required to indemnify to an **Insured Person**.

**28.**    **Wrongful Act** has the meaning by which that term is defined in each **Coverage** or any endorsement.

## C.  Common Liability Coverage Exclusions

**We** will not pay **Loss** resulting from any **Claim** made against **You**:

**1.**    brought about or contributed to by:

    a.    **You** gaining any personal profit, financial advantage or remuneration to which **You** were not legally entitled; or

    b.    **Your** deliberately fraudulent or deliberately criminal acts;

however, this exclusion will not apply unless and until there is a final, non-appealable adjudication as to such conduct in the underlying proceeding;

**2.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given and accepted or **Claim** reported under any other policy that provided coverage of which this **Policy** in whole or in part is a direct or indirect renewal or replacement;

**3.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** that any **Senior Executive** was aware of before the Prior Knowledge date stated in the Declarations if such person had reason to believe the **Wrongful Act** might result in a **Claim**;

**4.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed by any **Subsidiary** or any of its **Insured Persons** or by any entity that merges with the **Company** or such entity's **Insured Persons**:

    a.    before the effective date the entity became a **Subsidiary** or was merged with the **Company**;

    b.    on or after the effective date the entity became a **Subsidiary** or was merged with the **Company** which, together with a **Wrongful Act** actually or allegedly committed before the date the entity became a **Subsidiary** or was merged with the **Company**, would constitute **Interrelated Wrongful Acts**; or

    c.    after the date any **Subsidiary** ceased to be a **Subsidiary**; or

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

> 5.      based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including any **Pollutant**.

In applying any exclusion, no **Wrongful Act** of any **Insured Person** will be imputed to another **Insured Person**, and only the **Wrongful Acts** of a past, present or future chief executive officer or chief financial officer of the **Named Entity** will be imputed to the **Company**.

### D. Limits of Liability

1. Each **Coverage** will be subject to:

   a. a Separate Limit of Liability and/or a Shared Limit of Liability, and also subject to the **Policy** Aggregate Limit of Liability; or

   b. the **Policy** Aggregate Limit of Liability, without any Shared Limit of Liability or Separate Limit of Liability;

   all as indicated in the Declarations. Separate and Shared Limits of Liability are part of, and not in addition to, the **Policy** Aggregate Limit of Liability, if a **Policy** Aggregate Limit of Liability is indicated in the Declarations.

2. The amounts indicated in the Declarations for the Cyber Coverage will be **Our** maximum Limits of Liability with respect to all **Loss**, **Public Relations Costs** or **Costs** under the applicable Insuring Agreement within the Cyber Coverage and with respect to all **Loss**, **Public Relations Costs** and **Costs** under the Cyber Coverage.

3. The **Policy** Aggregate Limit of Liability is **Our** maximum aggregate liability for all **Loss** and **Public Relations Costs** payable under this **Policy**, regardless of the number of **Coverages** and regardless of whether any **Coverage** is subject to a Separate Limit of Liability and/or Shared Limit of Liability. **Our** obligations under the **Policy** will be completely fulfilled and extinguished once the **Policy** Aggregate Limit of Liability is exhausted by payment of **Loss** or **Public Relations Costs** under this **Policy**.

4. When a Separate Limit of Liability for a **Coverage** is indicated in the Declarations, the following applies to any **Coverage** identified as subject to a Separate Limit:

   a. the amount indicated in the Declarations will be the Separate Limit of Liability for such **Coverage**, which is **Our** maximum aggregate liability for all **Loss** under such **Coverage**, regardless of the number of **Claims**;

   b. **Defense Costs** are subject to and reduce the Separate Limit of Liability for the applicable **Coverage**;

   c. such Separate Limit of Liability may also be subject to any Shared Limit of Liability indicated in the Declarations as applicable to such **Coverage**, as provided in 5. below; and

   d. **Our** obligations under any **Coverage** will be completely fulfilled and extinguished if the applicable Separate Limit of Liability has been exhausted by the payment of **Loss** (including **Defense Costs**). Once a Separate Limit for any **Coverage** is exhausted, **We** will not be obligated to pay any additional **Loss** or continue to defend any **Claim** under such **Coverage**.

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

5. When a Shared Limit of Liability is indicated in the Declarations, the following applies to all **Coverages** identified as subject to that Shared Limit:

a. the amount indicated in the Declarations will be the Shared Limit of Liability for all **Coverages** identified in the Declarations as subject to the Shared Limit, which is **Our** maximum aggregate liability for all **Loss** under all such **Coverages**, regardless of the number of **Claims**;

b. **Defense Costs** are subject to and reduce the Shared Limit; and

c. **Our** obligations under all such **Coverages** will be completely fulfilled and extinguished once the Shared Limit is exhausted by payment of **Loss** (including **Defense Costs**) under those **Coverages**, regardless of the number of **Claims**. Once the Shared Limit is exhausted, **We** will not be obligated to pay any additional **Loss** or continue to defend any **Claim** under such shared **Coverages** even if the Separate Limit(s) of Liability applicable to any other shared **Coverage(s)** has not been exhausted by the payment of **Loss** (including **Defense Costs**).

6. Any Sub-limit of Liability in any **Coverage** is part of, and not in addition to, all applicable Limits of Liability indicated in the Declarations for such **Coverage**, unless such **Coverage** expressly provides otherwise.

**E. Retentions**

1. **Liability Coverages**

The Retentions for the **Coverages** are indicated in the Declarations. **We** will pay one hundred percent (100%) of the covered **Loss** from each **Claim** or **Interrelated Claims** above the applicable Retention, if any, up to the applicable Limit of Liability. The **Company** will be responsible for, and will hold **Us** harmless from, any amount within the Retention.

Only one Retention will be applicable to each **Claim** or **Interrelated Claims**. If more than one Retention applies to a **Claim**, only the highest Retention will apply.

If any covered **Loss** within any applicable Retention is paid on behalf of the **Insured Persons** by any source, including another insurer of an Excess Difference in Conditions Side A policy specifically excess of this **Policy**, then the applicable Retention under this **Policy** will be eroded by the amount paid.

If the **Company** is unable to indemnify **Insured Persons** solely due to its **Insolvency**, then:

a. **We** will pay **Defense Costs** on behalf of the **Insured Persons** without first requiring payment of the Retention applicable to any **Claim** made against them; and

b. with respect to **Loss** incurred solely by **Insured Persons** resulting from a **Claim** made against them, no Retention will apply.

In applying the Retention, the **Company** and **Plans** agree the certificate of incorporation, charter or other organizational documents of the **Company** or **Plans**, including by-laws and resolutions, are deemed to require indemnification and advancement of **Loss** to the **Insured Persons** to the fullest extent permitted by law.

2. **Cyber Coverage**

**Technology Executive Protection Policy**

The Retentions applicable to Insuring Agreement A.2. of the Cyber Coverage are indicated in the Declarations.

**We** will pay covered **Costs** from each **Data Incident** above the applicable Retention up to the applicable Limit of Liability. The Waiting Period Retention will apply to **Business Income Loss** from a **System Disruption**. The **Company** will be responsible for, and will hold **Us** harmless from, any amount within the Retention.

All **Data Incidents** having a common nexus, or causally connected by any fact, circumstance, situation, event or decision, will be considered a single **Data Incident**. Only one Retention will apply to a **Data Incident** or to multiple **Data Incidents** comprising a single **Data Incident**. A single **Data Incident** will be considered first discovered when the earliest of the **Data Incidents** comprising the single **Data Incident** is first discovered. If more than one Retention under Insuring Agreements A.2. or A.3.applies to a **Data Incident**, only the highest Retention will apply.

If a **Claim** under Insuring Agreement A.1. of the Cyber Coverage arises from a **Data Incident**, only the highest Retention under Insuring Agreements A.1. or A.2. will apply to such **Claim** and **Data Incident**.

**F.   Allocation**

1.   If any **Claim** includes both covered and uncovered matters or is made against any **Insured** and others (including **Insureds** who are not extended coverage for such **Claim**), all **Loss** from such **Claim** will be allocated between covered **Loss** and uninsured amounts as follows:

   a.   One hundred percent (100%) of **Defense Costs** incurred by the **Insureds** who are afforded coverage for such **Claim** will eb allocated to covered **Loss**; and

   b.   All loss other than **Defense Costs** will be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposure of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Company,** and others not insured under the **Policy.** In making such determination, **You** and **We** agree to use their best efforts to determine a fair and proper allocation of all such amounts. If **You** and **We** reach no agreement on allocating loss, **We** will advance the **Loss** which **We** believe to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined.

2.   If a **Data Incident** includes both covered and uncovered matters, **You** and **We** recognize there must be an allocation between insured and uninsured loss. **You** and **We** agree to use our best efforts to agree upon a fair and proper allocation. If **You** and **We** reach no agreement on allocating loss, **We** will advance the **Costs** which **We** believe to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined.

**G.   Liability Coverage Defense and Settlement**

1.   **We** have the right and duty to defend any **Claim** covered under any **Coverage**. **You** will have the right to associate with **Us** in the investigation, defense or settlement of any **Claim** to which coverage under this **Policy** may apply. **We** have the right to settle any **Claim** with **Your** consent, which will not be unreasonably withheld. In the event **We** recommend a settlement and **You** refuse to consent to that settlement recommendation, **Our** liability for that **Claim** will be limited to the amount in excess of the Retention which **We** would have contributed to the settlement had **You** consented to that settlement and the **Defense Costs** covered under the **Policy** and incurred before the date of **Your** refusal to settle, subject to the applicable Limit(s) of Liability.

2.   **You** will not retain counsel, incur **Defense Costs**, admit liability, offer to settle, or agree to a settlement in any **Claim** without **Our** express prior written consent, which will not be unreasonably

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

withheld. **You** will provide **Us** with all information and particulars that **We** may reasonably request to reach a decision as to such consent. This **Policy** does not provide coverage for **Defense Costs** incurred, or other **Loss** resulting from, any **Claim** in which **You** admitted liability, made any settlement offer or agreed to settle without **Our** consent.

However, if **You** can resolve a **Claim** for a total amount of **Loss** (including **Defense Costs**) that is less than the applicable Retention, **Our** consent will not be required to resolve that **Claim**. In that event, **You** must notify **Us** of the disposition of the **Claim** and provide **Us** with all information and particulars that **We** may reasonably request about the **Claim** and its disposition as soon as practicable but in no event later than the end of the **Policy Period**.

**H.  Coordination of Coverage**

    **1.**    If **Loss** from any **Claim** is covered under more than one **Coverage**, any **Loss** that **We** pay resulting from the **Claim** will be paid as follows order (provided the **Coverage** is purchased and applies to the **Claim**), subject to the applicable Limit of Liability:

        a.    first, under the Cyber Coverage; then

        b.    under the Technology Professional Liability Coverage; then

        c.    under the Employment Practices Liability Coverage; then

        d.    under the Fiduciary Liability Coverage; then

        e.    under the Directors and Officers Liability Coverage.

    If the **Coverages** applicable to such **Claim** are not subject to a Shared Limit of Liability, then **Our** maximum liability for all **Loss** from such **Claim** will be total amount of the Separate Limit of Liability for each **Coverage** applicable to such **Claim**, subject to the **Policy** Aggregate Limit of Liability.

    **2.**    However, solely with respect to **Non-Indemnifiable Loss** from any **Claim** against any **Insured Person**, **We** will first pay such **Loss** on behalf of that **Insured Person** under Directors and Officers Liability Coverage Insuring Agreement A.1. and, only after the applicable Limit of Liability for such **Coverage** is exhausted, thereafter pay such **Loss** in the order set forth in H.1. above.

**I.  Notices to the Insurer**

    **1.**    **You** must mail or email to **Us** all notices as indicated in the Declarations.

    **2.**    **You** must, as a condition precedent to **Your** rights under this **Policy**, give **Us** notice in writing of any **Claim** as soon as practicable after a **Senior Executive** first becomes aware of the **Claim**, but no later than ninety (90) days after the **Policy Period** expiration or the **Extended Reporting Period** expiration (if applicable). However, if a **Coverage** specifically permits **You** to choose to report a matter as a **Claim**, **Your** failure or decision not to give notice to **Us** of that matter will not impair **Your** right to give notice of a subsequent **Claim** involving **Interrelated Wrongful Acts** with that matter under this **Policy** or any renewal policy **We** issue to **You**.

    **3.**    If **You** first become aware of a specific **Wrongful Act** during the **Policy Period** or **Extended Reporting Period** and during the **Policy Period** or **Extended Reporting Period** give **Us** notice of:

        a.    that specific **Wrongful Act**;

**Technology Executive Protection Policy**

    b.     the injury or damage which has or may result therefrom; and

    c.     the circumstances by which **You** first became aware of it;

any **Claim** subsequently made against **You** arising out of that **Wrongful Act** will be deemed to have been made when **We** first received that written notice from **You**.

4.    All **Interrelated Claims** will be deemed made on the earliest date any such **Claim** was first made or deemed made under this **Policy** or any other policy providing similar coverage.

5.    As to any **Claim** for which any **Coverage** provides coverage, **You** will give **Us** such assistance, cooperation and information as **We** may reasonably require, including copies of reports, investigations, pleadings and other papers. **Your** failure to provide **Us** with full cooperation and information **We** may reasonably request will not impair the rights of any other **Insured** under this **Policy**. **You** must provide all notices to **Us** under the Cyber Coverage as indicated in that **Coverage.**

6.    **You** must provide all notices to **Us** under the Cyber Coverage as indicated in that **Coverage.**

**J.  Extended Reporting Period**

If **We** refuse to renew this **Policy** or the **Named Insured** cancels or non-renews this **Policy**, then solely with respect to **Liability Coverages**, the **Named Insured** has the right to purchase an additional period of time during which **Claims** may be reported under this **Policy** ("an **Extended Reporting Period**"), but only for **Wrongful Act**s committed or allegedly committed before the earliest of: the end of the **Policy Period**; the effective date of **Insolvency**; or the effective date of a **Takeover**.

The **Named Insured** may purchase an **Extended Reporting Period** for one of the periods of time stated in Item G. of the Declarations. The additional premium for an **Extended Reporting Period** will equal the applicable percentage, as stated in Item G. of the Declarations, of the full annual premium.

As a condition precedent to the **Named Insured**'s right to purchase the **Extended Reporting Period**, the **Named Insured** must have paid the total premium for this **Policy** and sent to **Us** a written request for the **Extended Reporting Period** together with the appropriate **Extended Reporting Period** Premium no later than sixty (60) days after the **Policy Period** ended.

The **Named Insured's** purchase of the **Extended Reporting Period** does not in any way increase the Limits or Sub-limits of Liability indicated in the Declarations. **Our** Limits or Sub-limits of Liability for **Claims** made during any **Extended Reporting Period** will be part of, and not in addition to, the applicable Limits or Sub-limits of Liability indicated in the Declarations.

No conversion to run-off coverage is available under N. Conversion to Run-Off if the **Named Insured** purchases an **Extended Reporting Period**. In the event of **Insolvency**, the receiver, conservator, liquidator, trustee, rehabilitator or similar official for the **Company** will not have the right to purchase the **Extended Reporting Period**.

**K.  Cancellation or Non-Renewal**

1.    The **Named Insured** may cancel this **Policy** at any time by written notice to Us. If the **Named Insured** cancels this **Policy**, **We** will refund any unearned premium on a pro rata basis. However, **Our** payment of any unearned premium will not be a condition precedent to the effectiveness of cancellation but such payment will be made as soon as practicable.

**Technology Executive Protection Policy**

2.    **We** may cancel this **Policy** only if the **Named Insured** does not pay the premium when due. **We** will provide notice of cancellation according to applicable state requirements.

3.    **We** will provide the **Named Insured** with no less than sixty (60) days advance notice if **We** elect not to renew this **Policy**.

**L.    Application**

**You** agree that the statements and information contained in and provided with the **Application** (which **We** will keep on file and which will be deemed attached to this **Policy** as if physically attached) are the basis of this **Policy** and are to be considered incorporated into and constituting a part of this **Policy**. **You** further agree that the statements and information contained in and provided with the **Application** are **Your** representations and this **Policy** is issued in reliance upon the truth of such representations. If any material statements, representations, or information contained in or provided with the **Application** are not true and accurate, no coverage will be provided under the **Policy** for:

1.    any **Insured Person** for any **Claim** if such **Insured Person** had knowledge, as of this **Policy**'s inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the **Application**, whether or not that **Insured Person** knew of such disclosure in the **Application**; no **Insured Person**'s knowledge will be imputed to any other **Insured Person** to determine if coverage is available;

2.    the **Company** or any **Plan**, to the extent that it indemnifies any **Insured Person** with the knowledge described in L.1. above; and

3.    the **Company** or any **Plan** for any **Claim** if the person who signed the **Application** or any **Senior Executive** had knowledge, as of this **Policy**'s inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the **Application**.

In no event will **We** rescind this **Policy**.

**M.    Action Against the Insurer**

1.    With respect to any **Claim**, no action will be taken against **Us** unless, as a condition precedent thereto, there has been full compliance with all the terms of this **Policy**, and until **Our** obligation to pay has been finally determined by an adjudication against **You** or by written agreement between **You**, the claimant and **Us**.

2.    With respect to any **Data Incident** under the Cyber Coverage, no action will be taken against **Us** unless, as a condition precedent thereto, there has been full compliance with all the terms of this **Policy** including timely notice of any **Data Incident**, and until ninety (90) days after **You** have provided **Us** with an affirmative proof of loss with full particulars and unless brought within two (2) years after the date **You** first discovered that **Data Incident**.

3.    No person or entity will have any right under this **Policy** to join **Us** as a party to any action against **You** nor will **You** or **Your** legal representative implead **Us** in any such action.

**N.    Merger or Acquisition**

**Technology Executive Protection
Policy**

MPL 10-0000 04 21

1. If during the **Policy Period** the **Named Insured** acquires **Control** of or acquires all or substantially all of an entity's assets by merger or otherwise, and that entity's total assets exceed fifty percent (50%) of the total consolidated assets of the **Named Insured** as of this **Policy**'s inception, **You** must give written notice of that acquisition to **Us** as soon as practicable, but no later than ninety (90) days from the effective date of that acquisition, together with any information **We** may request. **We** may require premium adjustment and coverage revisions; however, the entity will automatically be included as a **Subsidiary** for the first ninety (90) days after the effective date of such acquisition, subject to any further conditions or limitations on coverage set forth in the **Policy** with respect to such acquisition.

2. With respect to Cyber Coverage, no coverage is provided for any **Data Incident** of any **Subsidiary** or its **Insured Persons** or any entity that merges with the **Company** or such entity's **Insured Persons** first discovered before the effective date the entity became a **Subsidiary** or was merged with the **Company**.

3. With respect to Fiduciary Liability Coverage, any **Plan** (except an employee stock ownership plan, as defined by ERISA or any related or similar state, local or foreign law or regulation) which, after this **Policy**'s inception, is created or acquired by the **Company**, or merges with any **Plan** which was afforded coverage under this **Policy** before such merger, will be an **Insured** as of the effective date of creation, acquisition or merger unless the created, acquired, or merged **Plan** is a pension plan whose assets exceed fifty percent (50%) of the assets of all of the **Company's** pension plans as of this **Policy**'s inception. In that event, if written notice is given to **Us** within ninety (90) days of such creation, acquisition, or merger, and **You** agree to any premium adjustments and/or coverage revision **We** may require, then such pension plan will be included as an **Insured** as of the date of creation, acquisition or merger. However, except as may be provided by written endorsement to this **Policy**, no coverage will be provided for **Wrongful Act**s of any such created, acquired or merged Plan, or of any **Insured Persons** of any such **Plan**, actually or allegedly committed:

   a. before the date of such creation, acquisition or merger; or

   b. on or after the date of such creation, acquisition or merger, which together with a **Wrongful Act** actually or allegedly committed before such date, would constitute **Interrelated Wrongful Acts**.

**O. Conversion to Run-Off Coverage**

In the event of an **Insolvency** or **Takeover** during the **Policy Period**, then:

1. coverage under this **Policy** will continue until the **Policy**'s expiration, but solely with respect to **Wrongful Acts** actually or allegedly committed, or **Data Incidents** first discovered, before the effective date of the **Insolvency** or **Takeover**, and such coverage will be excess of any other insurance available for any such **Wrongful Acts** or **Data Incidents**;

2. the **Named Insured** must give **Us** written notice of the **Insolvency** or **Takeover** within ninety (90) days after that event and, with respect to a **Takeover**, provide **Us** such information as **We** deem necessary; and

3. the entire premium for this **Policy** will be deemed earned as of the effective date of any such event.

**P. Coverage Extensions**

**Technology Executive Protection
Policy**

1.    This **Policy** will also apply to:

    a.    any lawful spouse or **Domestic Partner** of an **Insured Person**; and

    b.    the estates, heirs, legal representatives or assigns of any **Insured Person** in the event of their death, incapacity or bankruptcy;

but only for **Claims** arising out of such **Insured Person**'s **Wrongful Act**s.

2.    This **Policy's** coverage will apply worldwide except to the extent that:

    a.    a **Coverage** specifically provides otherwise;

    b.    any terms of this **Policy** conflict with any applicable laws, in which case such terms are hereby amended to conform to such laws; or

    c.    trade or economic sanctions or other laws or regulations prohibit **Us** from providing insurance.

**Q.  Subrogation**

If **We** make any payment under this **Policy**, **We** will be subrogated to **Your** rights of recovery.  **You** will execute all papers to secure such rights, including executing any documents necessary to enable **Us** to effectively bring suit in **Your** name. In no event will **We** exercise **Our** rights to subrogation against an **Insured Person** under this **Policy** unless that **Insured Person** was convicted of a deliberate criminal act or determined by a final, non-appealable adjudication adverse to that **Insured Person** to have committed a deliberate fraudulent act, or to have obtained any personal profit, financial advantage or remuneration to which such **Insured Person** was not legally entitled.

If **We** pay **Indemnifiable Loss** on behalf of an **Insured Person**, **We** will have the contractual right to recover from the **Company** the amount of **Loss** up to the amount of the Retention not satisfied by the **Company** and **We** will be subrogated to the **Insured Person's** rights.

**We** may also seek recourse against a fiduciary if a **Plan** purchased and paid for Fiduciary Liability Coverage.

**R.  Assignment**

Assignment of interest under this **Policy** will not bind **Us** until **Our** consent is endorsed.

**S.  Named Insured Represents You**

By accepting this **Policy**, the **Named Insured** is designated to act on behalf of all **Insureds** for all purposes, including giving and receiving of notices and correspondence, cancellation or non-renewal of this **Policy**, payment of premiums and receipt of any return premiums.

**T.  Bankruptcy**

**Your** bankruptcy or insolvency does not relieve **Us** of **Our** obligations under this **Policy**. In the event of such bankruptcy or insolvency, **You** waive and release any automatic stay or injunction in such proceeding which may apply to this **Policy** or its proceeds and agree not to oppose or object to **Our** efforts or any other **Insured**'s efforts to obtain relief from any such stay or injunction.

**Technology Executive Protection Policy**

MPL 10-0000 04 21

IN WITNESS WHEREOF, **We** have caused this **Policy** to be signed by its President and Secretary and countersigned, if required, on the Declarations page by **Our** duly authorized agent.

Vouch Insurance

**VOUCH**

**State National Insurance Company, Inc.**

**Technology Executive Protection
Policy**

MPL 20-0001 04 21

## Directors & Officers Liability Coverage

### A. Insuring Agreements

1. Insured Person Liability

   **We** will pay on any **Insured Person's** behalf all **Non-Indemnifiable Loss** the **Insured Person** is legally obligated to pay resulting from a **Claim** for a **Wrongful Act** first made against that **Insured Person** during the **Policy Period** or **Extended Reporting Period**.

2. Insured Person Reimbursement

   **We** will pay on the **Company**'s behalf all Indemnifiable **Loss** any **Insured Person** is legally obligated to pay resulting from a **Claim** for a **Wrongful Act** first made against that **Insured Person** during the **Policy Period** or **Extended Reporting Period**.

3. Company Liability

   **We** will pay on behalf of the **Company** all **Loss** resulting from a **Claim** for a **Wrongful Act** first made against the **Company** during the **Policy Period** or **Extended Reporting Period**.

4. Additional Insuring Agreement A.1. Limit in the Event of **Insolvency**

   In the event of **Insolvency** during the **Policy Period**, an additional Limit of Liability in the amount of $1,000,000 will be available under this **Coverage** for **Non-Indemnifiable Loss** covered under Insuring Agreement A.1. resulting from any **Claim** first made against **Insured Persons** during the period of 365 days immediately after the effective date of **Insolvency**, which will be in addition to and not part of the **Policy** Aggregate Limit of Liability; provided:

   a. such **Claim** is solely for **Wrongful Act**s committed or allegedly committed before the effective date of **Insolvency**;

   b. such additional Limit of Liability is subject to the other terms and conditions of this **Policy** and in excess of both the **Policy** Aggregate Limit of Liability stated in the Declarations and any insurance written specifically excess of this **Policy** or **Coverage**; and

   c. the **Policy** Aggregate Limit of Liability stated in the Declarations is exhausted by payment of **Loss** before **We** have any obligation to pay any **Loss** under such additional Limit of Liability.

### B. Definitions

1. **Claim** also means:

   a. a civil, criminal, administrative, or regulatory investigation of any **Insured**, when that **Insured** is identified in writing by the investigating authority as a party against whom a proceeding may be commenced, and in the case of an investigation by the Securities and Exchange Commission or a similar state or foreign government authority, after a subpoena has been served upon that **Insured**, including any appeal therefrom; however, an investigation of the **Company** will only be considered a **Claim** while that investigation is also pending against an **Insured Person**;

   b. an official request to extradite any **Insured Person** or the execution of a warrant for the arrest of an **Insured Person** where the execution of the warrant is an element of extradition; or

   c. solely as to Insuring Agreement A.3., a **Derivative Demand**.

**Technology Executive Protection Policy**

MPL 20-0001 04 21

2. **Derivative Demand** means a written demand made upon the **Company's** board of directors by one or more security holders of the **Company** to bring a civil proceeding in a court of law against a director or officer of the **Company** for a **Wrongful Act**.

3. **Insured Persons** means all natural persons who were, now are or will be:

   a. engaged and directed by the **Company** to provide labor or service, including any permanent, temporary, leased, or volunteer worker; and

   b. directors, officers, management committee members, management board observers, advisory committee members, members of the board of managers or natural person general partners of the **Company**.

4. **Investigation Costs** means the reasonable and necessary costs, charges, fees (including attorneys' fees and experts' fees) and expenses that the **Company** (including its board of directors or any committee of the board of directors of the **Company**) incurs solely to conduct any necessary investigation or evaluation of a **Derivative Demand** to determine if it would be in the **Company's** best interests to prosecute the allegations stated in the **Derivative Demand**. **Investigation Costs** do not include: (a) costs, charges, fees or expenses incurred in any **Claim** related to any **Derivative Demand** or in prosecuting any claims alleged in any **Derivative Demand**; or (b) regular or overtime wages, salaries or fees of the **Insured Persons**. No Retention applies to **Investigation Costs**.

5. **Loss** also means: (a) **Investigation Costs**; and (b) any amount imposed upon **You** pursuant to the Telephone Consumer Protection Act of 1991 or any similar state or local law pertaining to unsolicited or non-consensual communication, advertising or fundraising, through faxes, telephone calls, texting or any other medium.

   **Loss** does not include:

   a. taxes or criminal or civil fines or penalties imposed by law; or

   b. the portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of any securities representing the amount by which such price or consideration is effectively increased, but only as to the coverage provided under Insuring Agreements A.2. and A.3.

6. **Non-profit** means any non-profit or eleemosynary entity.

7. **Securities Claim** means any **Claim** against **You** alleging a violation of any federal, state, local or foreign securities law, regulation or rule, whether statutory or under common law, brought by:

   a. any person or entity (including the Securities and Exchange Commission) that alleges, arises out of, or is based upon or attributable to, in part or in whole, the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities issued by the **Company**; or

   b. any security holder of the **Company** solely as to that security holder's interest in securities issued by the **Company**, whether direct, by class action, or derivatively on behalf of the **Company**.

8. **Wrongful Act** means:

   a. any actual or alleged act, omission, error, misstatement, misleading statement, neglect, breach of duty by any **Insured Person**:

      1) in his or her capacity as an **Insured Person**;

      2) in providing legal services as a lawyer, but only if the **Insured Person** is performing such services for the **Company** in his or her capacity as an employee of the **Company** and does not receive a fee for such legal services;

**Technology Executive Protection Policy**

MPL 20-0001 04 21

    3) in his or her capacity as a director, officer, trustee or governor of a **Non-profit**, but only while serving in such capacity at the written consent or direction of the **Company**;

  b. any matter claimed against any **Insured Person** by reason of his or her status as an **Insured Person**; or

  c. any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**, but solely as to Insuring Agreement A.3.

## C. Exclusions

1. **We** will not pay **Loss** resulting from any **Claim** made against **You**:

  a. for actual or alleged: bodily injury, sickness, disease, or death of any person; damage to or destruction of any tangible property including loss of use thereof; mental anguish or emotional distress; invasion of privacy; wrongful entry or eviction; false arrest, detention or imprisonment; malicious prosecution; or libel or slander; however, this exclusion will not apply to any **Securities Claim**;

  b. for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any amendments thereto or any similar provisions of state, local or foreign statutory or common law, or any rules or regulations promulgated thereunder, involving an employee pension, welfare or benefit plan sponsored by the **Company** or for which the **Company** is a fiduciary;

  c. for any act, omission, error, misstatement, misleading statement, neglect, breach of duty of any **Insured Person** serving as a director, officer, trustee, regent or governor of any entity other than the **Company**, even if directed or requested to serve as such; however, this exclusion will not apply to **Loss** resulting from any **Claim** to the extent:

    1) the **Claim** is based on the service of an **Insured Person** as a director, officer, trustee, regent or governor of a **Non-profit**; and

    2) the **Loss** is in excess of any indemnification available to such **Insured Person** from the **Non-profit** and any valid and collectible insurance provided for, to or on behalf of the **Non-profit** or its directors, officers, trustees, regents or governors;

  d. by or on behalf of the **Company**, any security holder of the **Company** or any **Insured Person**; however, this exclusion will not apply to any **Claim**:

    1) brought by any **Insured Person** as a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** not otherwise excluded by the terms of this **Policy**;

    2) brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of the **Company** or any past, present or future director, officer, management committee member, member of the board of managers or natural person general partner of the **Company**; however, this exclusion will not apply to whistleblower conduct protected under 18 U.S.C. 1514A(a) or any similar provision of any applicable federal, state, local or foreign securities law, including the Dodd Frank Wall Street Reform and Consumer Protection Act of 2010, by an **Insured Person**:

      (a) who is not and was not a director, officer, management committee member, member of the board of managers or natural person general partner of the **Company**; or

      (b) if the security holder also alleges, certifies or affirms the **Insured Person** as providing likely support for such **Claim** due to such whistleblower conduct;

**Technology Executive Protection Policy**

3) brought by any debtor in possession, creditors committee, receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the **Company** in the event of **Insolvency**;

4) brought by an **Insured Person** who, for at least two (2) years before the **Claim** is first made, had not served as a director, officer, management committee member, member of the board of managers, general counsel or risk manager (or equivalent position) of, or consultant to, the **Company**; so long as the **Claim** is brought totally independent of, and without the solicitation, assistance, active participation or intervention of, any other **Insured Person** who also had not served in such capacity for at least two (2) years before the **Claim** is first made; or

5) brought and maintained by any **Insured Person** in a jurisdiction outside of the United States of America (and its territories and possessions) and subject to that jurisdiction's substantive and procedural laws.

2. **We** will not pay **Loss** resulting from any **Claim** made against **You** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

   a. any public offering, sale, solicitation or distribution of any securities issued by the **Company**;

   b. any employment-related conduct by any present or former employee or independent contractor of the **Company** or applicant for employment with the **Company**, including actual or alleged: wrongful dismissal, discharge or termination; misrepresentation; misclassification; harassment or discrimination; or violation of the Fair Labor Standards Act, any amendments thereto or any rules or regulations promulgated thereunder or any similar provisions of any federal, state, local or foreign law, including the California Labor Code; however, this exclusion will not apply to any **Securities Claim**; or

   c. any actual or alleged discrimination against, harassment or, or violation of the civil rights of, any customer, client, supplier or distributor of the **Company**; however, this exclusion will not apply to any **Securities Claim**.

3. **We** will not pay **Loss** resulting from any **Claim** made against the **Company**:

   a. for any actual or alleged breach by the **Company** of an express or implied contract, except to the extent the **Company** would have been liable in the absence of such contract;

   b. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged price fixing, restraint of trade, monopolization, unfair trade, or violation of the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, any rules or regulations promulgated under or in connection with such statutes, or any similar provision of any state, federal or local statutory law or common law;

   c. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged plagiarism or infringement of copyright, patent, trademark or trade name, or misappropriation of ideas or trade secrets;

   d. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged defect, deficiency, inadequacy or dangerous condition of any of the **Company**'s products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of such products; or

   e. for performing or failing to perform any services for others for a fee, service or other remuneration; however, this exclusion will only apply to any **Claim** brought by or on behalf of

**Technology Executive Protection Policy**

MPL 20-0001 04 21

any person or entity, or affiliate of any person or entity, for whom such services were or are performed.

Exclusion 3. will not apply to any **Securities Claim**.

4. **We** will not pay **Loss** resulting from any **Claim**:

   a. By, on behalf of, or at the behest of any **Non-profit**, or any affiliate of any **Non-profit** or any director or officer of any **Non-profit**; or

   b. by any member of any **Non-profit**, whether directly or derivatively, unless such member bringing such **Claim** is acting totally independent of, and totally without the solicitation of, or assistance of, or intervention of, any director or officer, or the **Non-profit**, or any affiliate of the **Non-profit**.

5. Solely with respect to this **Coverage**, Exclusion C.5. of the Common Terms and Conditions pertaining to **Pollutants** will not apply to any **Securities Claim** or any coverage provided under Insuring Agreement A.1.

In applying any exclusion, no **Wrongful Act** of any **Insured Person** will be imputed to another **Insured Person**, and only the **Wrongful Act**s of a past, present or future chief executive officer or chief financial officer of the **Named Entity** will be imputed to the **Company**.

D. **Conditions**

1. Other Insurance

   If any **Loss** under this **Coverage** is insured in whole or in part by another valid and collectible policy or policies (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), including any insurance provided for, to or on behalf of any **Non-profit** or its directors, officers, trustees, regents or governors, this **Coverage** will be excess of and will not contribute with such other insurance, regardless of whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise.

2. Sub-limits of Liability

   Our maximum aggregate liability for the following is the applicable Sub-Limit of Liability identified in the Declarations, which is subject to the applicable **Coverage** and **Policy** Limits of Liability identified in the Declarations:

   a. all **Investigation Costs** resulting from all **Derivative Demands**; and

   b. all **Loss** resulting from all **Claims** for actual or alleged violations of the Telephone Consumer Protection Act of 1991 or any similar state or local law pertaining to unsolicited or nonconsensual communication, advertising or fundraising, through faxes, telephone calls, texting or any other medium ("TCPA Claims").

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
|---|
| ☐ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1028 04 21**

## Certified Acts of Terrorism Coverage Exclusion

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

**A.** **We** will not be liable to make any payment in connection with any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any "Certified Act of Terrorism".

For purposes of this exclusion, "Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1038 04 21**

## Amend Definition of Loss – Remove Punitive Damages

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

1.  Section **B. 17**. Common Definitions of the Common Terms and Conditions is deleted and replaced with the following:

    **Loss** means compensatory damages, settlements, judgments (including pre-judgment and post-judgment interest) and **Defense Costs**. **Loss** does not include any matter which may be deemed uninsurable under the law pursuant to which this **Policy** will be construed.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
|---|
| ☐  All coverages provided by this Policy |
| ☒  Directors & Officers Liability |
| ☐  Employment Practices Liability |
| ☐  Fiduciary Liability |
| ☐  Technology Professional Liability |
| ☐  Cyber Coverage – Agreement A.1. |
| ☐  Cyber Coverage – Agreement A.2. |

MPL 10-1081 04 21

## Modification to Insured v. Insured Exclusion

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

**A.**  **Professional Investing Firm** means any "venture capital fund", as defined under 17 CFR § 275.203(l), that provided capital to the **Company** in exchange for securities of the **Company**.

**B.**  Section C. Exclusions 1.d. of the Directors & Officers Liability Coverage is amended by the addition of the following sub-paragraph 6):

6)  brought by a **Professional Investing Firm** against any **Insured Person** other than a principal or employee of the **Professional Investing Firm** whom the **Professional Investing Firm** appointed or selected to serve as its representative with the **Company** as a director, management committee member, management board observer or member of the board of managers of the **Company**.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1091 04 21**

## Specified Activity Exclusion – Cryptocurrency

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

A. **Common Liability Coverage Exclusions** is amended to add the following:

6. based upon, arising out of, relating to, directly or indirectly resulting from or in any consequence of, or in any way involving:

a. the sale, advertising, mining, trading, microtipping, distribution or storage of any **Cryptocurrency.**

B. **Common Definitions** is amended to add the following:

29. **Cryptocurrency** means any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank and includes, but is not limited to the following:

a. Bitcoin

b. Litecoin

c. Peercoin

d. Namecoin

e. Cardano

f. EOS

g. Ethereum

h. Ripple

i. Bitcoin Cash

j. Ethereum Classic

k. Zcash

l. Stellar Lumen

m. Bitcoin Satoshi's Vision (Bitcoin SV); or

n. Any Initial Coin Offering (ICO)

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1091 04 21**

Any other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Management Liability Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1093 04 21**

## <u>Deletion of Securities Claim Coverage – Public Company</u>

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

A.  **We** will not pay **Loss** resulting from any **Claim** made against **You** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the purchase or sale of, or offer or solicitation of an offer to purchase or sell, of any securities issued by the **Company** if, prior to the **Wrongful Acts** alleged in such **Claim**:

   1.  the **Company** had issued any securities in a public offering; or

   2.  any securities of the **Company** traded publicly over any stock exchange, including, but not limited to:

      a.  Nasdaq;

      b.  Dow Jones;

      c.  New York Stock Exchange;

      d.  Cboe Global Markets;

      e.  Intercontinental Exchange;

      f.  Euronext; or

      g.  London Stock Exchange.

B.  Section **C. Exclusions 1.d.** is deleted and replaced by the following:

   d.  by or on behalf of the **Company**, any security holder of the **Company** or any **Insured Person**; however, this exclusion will not apply to any **Claim**:

      1)  brought by any **Insured Person** as a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** not otherwise excluded by the terms of this **Policy**; or

      2)  brought by any debtor in possession, creditors committee, receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the **Company** in the event of **Insolvency**.

C.  Section **C. Exclusions 1.a.** and **2.b.** and **2.c.** are amended by deleting the phrase, "however, this exclusion will not apply to any **Securities Claim**". The last sentence of Section **C. Exclusions 3.**, "Exclusion 3. shall not apply to any **Securities Claim**", is deleted.

*ENDORSEMENT No.*
*38608dd7-9267-460d-81fb-fb2a9987608c*
*Effective Date: 2022-11-09*

Vouch Insurance © 2021

1

# State National Insurance Company, Inc.

**Technology Management Liability Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1093 04 21**

All other terms and conditions remain the same.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
|---|
| ☐ All coverages provided by this Policy |
| ☒ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 20-1002 04 21**

## Defense Costs for IP Claims (Subject to Sub-limit and Co-insurance)

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

**A.** Solely for the purposes of the coverage afforded by this endorsement, the following apply:

    **1.** **Your** Co-insurance Percentage: <u>10</u>%

    **2.** **Our** Insured Percentage: <u>90</u> %

    **3.** IP **Defense Costs** Sub-limit: $ <u>25,000</u>, which will be part of and not in addition to the Limit of Liability applicable to the Directors & Officers Liability Coverage.

**B.** Solely for the purposes of the coverage afforded by this endorsement, Section C. Exclusions 3.c. of the Directors & Officers Liability Coverage is deleted and replaced by the following:

    **c.** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged plagiarism or infringement of copyright, patent, trademark or trade name, or misappropriation of ideas or trade secrets; however, this exclusion will not apply to **Our** Insured Percentage of any **Defense Costs** that exceed the applicable Retention resulting from any such **Claim**, provided that:

        **(1)** **You** will be responsible to pay **Your** Co-insurance Percentage of any **Defense Costs** that exceed the applicable Retention resulting from any such **Claim**, and in no event will **We** be responsible to pay **Your** Co-insurance Percentage; and

        **(2)** The maximum amount that **We** will be obligated to pay of **Our** Insured Percentage of any **Defense Costs** that exceed the applicable Retention resulting from any such **Claim** is the IP **Defense Costs** Sub-limit;

**C.** Solely for purposes of coverage provided by this endorsement, Section F. Allocation 1. of the Common Terms and Conditions is deleted,

**D.** Solely for the purposes of the coverage provided under this endorsement, Section G. Liability Coverage Defense and Settlement 1. of the Common Terms and Conditions is deleted and replaced by the following with respect to any **Claim** described in Section C. Exclusions 3.c. of the Directors & Officers Liability Coverage:

**You**, and not **We**, have the duty to defend any **Claim**. At all times **We** will have the right to associate with **You** in the investigation, defense or settlement of any **Claim**. **We** will reimburse **You** for **Our** Insured Percentage of those **Defense Costs** that exceed the applicable Retention for such **Claim** only upon the final disposition of the **Claim**. However, upon written request, **We** will advance **Our** Insured Percentage of **Defense Costs** in any **Claim**, provided that **You** have satisfied the applicable Retention

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☐ All coverages provided by this Policy |
| ☒ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 20-1002 04 21**

and only for so long as **You** pay **Your** Co-insurance obligation with respect to **Defense Costs** in that **Claim**. If it is established that **We** have no liability under the **Policy** for the advanced **Defense Costs**, **You** agree to repay **Us** upon demand all of the **Defense Costs** that **We** advanced on **Your** behalf.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☐ All coverages provided by this Policy |
| ☒ Directors & Officers Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 20-1033 04 21**

## Cap Table Disputes Extension

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

**A.** **Claim** includes any **Cap Table Claim**.

**B.** Solely with respect to any **Cap Table Claim**, **Loss** will be limited to **Defense Costs** resulting from any such **Cap Table Claim**.

**C.** **Cap Table Claim** means any **Securities Claim** for any **Wrongful Act** involving the records the **Company** maintains of its own securities, warrants and options, the ownership, value, dilution and types of the **Company's** securities, each securityholder's percentage of ownership in the **Company**, and the amounts paid by the securityholders of the **Company** for such securities.

**D.** Solely with respect to **Defense Costs** resulting from any **Cap Table Claim**:

  **1.** Section C. Exclusions, 1.d. of the Directors & Officers Liability Coverage is deleted;

  **2.** Section C. Exclusions, 2.b. of the Directors & Officers Liability Coverage is deleted;

  **3.** Section C. Exclusions, 2.c. of the Directors & Officers Liability Coverage is deleted;

  **4.** Section C. Exclusions, 3.a. of the Directors & Officers Liability Coverage is deleted;

  **5.** Section C. Common Liability Coverage Exclusions, 1.a. of the Common Terms and Conditions is deleted;

  **6.** Section C. Common Liability Coverage Exclusions, 1.b. of the Common Terms and Conditions is deleted.; and

  **7.** Section F. Allocation 1. of the Common Terms and Conditions is deleted.

**E.** **Defense Costs** coverage provided by this endorsement is subject to Co-insurance and the following Sub-limit, which will be part of and not in addition to the Limit of Liability applicable to the Directors & Officers Liability Coverage:

  **1.** Sub-limit:  $ 50,000

  **2.** **Your** Co-insurance: 10%

  **3.** **Our** Insured Percentage: 90%

You will pay the percentage of **Defense Costs** set forth in ITEM 5.b. above resulting from any **Cap Table Claim** for the purposes of any coverage provided by this endorsement.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
|---|
| ☐  All coverages provided by this Policy |
| ☒  Directors & Officers Directors & Officers Liability |
| ☐  Employment Practices Liability |
| ☐  Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐  Cyber Coverage - Agreement A.1. |
| ☐  Cyber Coverage - Agreement A.2. |

**MPL 20-1033 04 21**

**F.**   Solely for the purposes of the coverage provided under this endorsement, Section G. Liability Coverage Defense and Settlement 1. of the Common Terms and Conditions is deleted and replaced by the following with respect to any **Cap Table Claim**:

**You**, and not **We**, have the duty to defend any **Claim**. At all times **We** will have the right to associate with **You** in the investigation, defense or settlement of any **Claim**. **We** will reimburse **You** for **Our** Insured Percentage of those **Defense Costs** that exceed the applicable Retention for such **Claim** only upon the final disposition of the **Claim**. However, upon written request, **We** will advance **Our** Insured Percentage of **Defense Costs** in any **Claim**, provided that **You** have satisfied the applicable Retention and only for so long as **You** pay **Your** Co-insurance obligation with respect to **Defense Costs** in that **Claim**. If it is established that **We** have no liability under the **Policy** for the advanced **Defense Costs**, **You** agree to repay **Us** upon demand all of the **Defense Costs** that **We** advanced on **Your** behalf.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☐ All coverages provided by this Policy |
| ☒ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 20-1050 04 21**

## Modification to Coverage A.4.

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

**A.**   Section A. Insuring Agreements 4. Additional Insuring Agreement A.1. Limit in the Event of **Insolvency** of the Directors & Officers Liability Coverage is deleted and replaced by the following:

**4.**   Insuring Agreement A.1. Sub-limit in the Event of **Insolvency**

In the event of **Insolvency** during the **Policy Period**, a Sub-limit of Liability in the amount of $1,000,000 will be available under this **Coverage for Non-Indemnifiable Loss** covered under Insuring Agreement A.1. resulting from any **Claim** first made against **Insured Persons** during the period of 365 days immediately after the effective date of **Insolvency**, which will be part of and not in addition to the **Policy** Aggregate Limit of Liability; provided:

**a.**   such **Claim** is solely for **Wrongful Acts** committed or allegedly committed before the effective date of **Insolvency**; and

**b.**   such Sub-limit of Liability is subject to the other terms and conditions of this **Coverage**.

All other terms and conditions remain unchanged.

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
| --- |
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

MPL 10-1064 04 21

## <u>New Jersey Amendatory Endorsement</u>

Solely for the purposes of coverage provided under the Coverage Part(s) selected above, it is hereby understood and agreed that the **Policy** is modified as follows:

The Common Terms and Conditions are amended as follows:

**I.** The definition of **Domestic Partner** is deemed to include any natural person qualifying as a party to a civil union with an **Insured Person** under applicable New Jersey law.

**II.** Section **K. Cancellation or Non-Renewal** is replaced by the following:

**K. Cancellation or Non-Renewal**

1. The **Named Insured** may cancel this **Policy** at any time by written notice to **Us**. If the **Named Insured** cancels this **Policy**, **We** will refund any unearned premium on a pro rata basis. However, **Our** payment of any unearned premium will not be a condition precedent to the effectiveness of cancellation but such payment will be made as soon as practicable.

2. **We** may cancel this **Policy** only if the **Named Insured** does not pay the premium when due, in which case ten (10) days advance written notice will be mailed or delivered to the **Named Insured**. The notice will clearly state the effect of nonpayment by the due date. No cancellation for nonpayment of premium will be effective if payment of the amount due is made prior to the effective date set forth in the notice.

3. If **We** elect not to renew this **Policy**, **We** will mail advance written notice to the **Named Insured** at least sixty (60) days, but not more than one hundred and twenty (120) days, before the expiration date of this **Policy**. **We** will not be required to provide notice of non-renewal if the **Named Insured** has replaced coverage elsewhere or has otherwise specifically requested termination.

4. If **We** cancel or non-renew this **Policy**, notice will be sent by:

   a. Certified mail; or

   b. First class mail, if at the time of mailing **We** obtain from the Post Office Department a date stamped proof of mailing showing the name and address of the **Named Insured**.

5. Pursuant to New Jersey law, this **Policy** cannot be cancelled or non-renewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the **Insured**. The underwriting reasons or guidelines that an insurer can use to cancel or non-renew this **Policy** are maintained by the insurer in writing and will be furnished to the **Insured** and/or the **Insured's** lawful representative upon written request. This provision will not apply to any policy which has been in effect for less than sixty

# State National Insurance Company, Inc.

**Technology Executive Protection Policy**

| This endorsement amends: |
|---|
| ☒ All coverages provided by this Policy |
| ☐ Directors & Officers Liability |
| ☐ Employment Practices Liability |
| ☐ Fiduciary Liability |
| ☐ Technology Professional Liability |
| ☐ Cyber Coverage - Agreement A.1. |
| ☐ Cyber Coverage - Agreement A.2. |

**MPL 10-1064 04 21**

(60) days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

All other terms and conditions remain unchanged.

**MPL 10-1047 04 21**

### DISCLOSURE PURSUANT TO TERRORISM RISK
### INSURANCE ACT (Coverage Included)

POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $92, and does not include any charges for the portion of losses covered by the United States government under the Act.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE, AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

State National Insurance Company, Inc.

_____                    _____
Policyholder/Applicant's Signature                                         Insurance Company

_____
Print Name                                                              Policy Number
                                                                        HDG.MPL.22.6JS2-FDWH
_____
Date