NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VASILIY A. FOMIN and SEARCHFINDER LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE NATIONAL INSURANCE COMPANY, INC.,<br><br>*Defendant*. | Civil Action No. 24-cv-10200<br><br>**OPINION**<br><br>April 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on cross-motions filed by Plaintiffs Vasiliy A. Fomin and SearchFinder LLC (collectively, "Policyholders") and Defendant State National Insurance Company, Inc. ("SNIC"). Policyholders move for partial summary judgment seeking reimbursement of defense costs and an award of counsel fees. (ECF 24, "Plaintiffs' Motion" or "Pl. Mot.") SNIC moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF 23, "Defendant's Motion" or "Def. Mot.") The parties filed oppositions (ECF 28, "Defendant's Opposition" or "Def. Opp."; ECF 29, "Plaintiffs' Opposition" or "Pl. Opp."), and replies followed (ECF 30, "Defendant's Reply" or "Def. Reply"; ECF 31, "Plaintiffs' Reply" or "Pl. Reply".) The Court has decided these motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Policyholders' Motion is **GRANTED** and SNIC's Motion is **DENIED**.

1

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff SearchFinder LLC ("SearchFinder") is a New Jersey limited liability company with its principal place of business in Cliffside Park, NJ, and Defendant State National Insurance Company, Inc. ("SNIC") is a Texas corporation with its principal place of business in Bedford, TX. (ECF 1, "Complaint" or "Compl." ¶¶ 5, 7.) Plaintiff Vasiliy Fomin is the managing member and Chief Executive Officer of SearchFinder. (*Id.* ¶ 6.) SearchFinder purchased a Directors & Officers liability insurance policy from SNIC, number HDG.MPL.22.6JS2-FDWH, effective November 9, 2022 through November 9, 2023 (the "Policy"). (Pls.' Statement of Undisputed Facts ¶ 1; ECF 12-1.) It is undisputed that SearchFinder qualifies as the "Company" and "the Named Insured" under the Policy (ECF 12-1 at 13), and that Fomin qualifies as an "Insured Person," a term that encompasses "all natural persons … engaged and directed by the Company to provide labor or service" and "directors [and] officers … of the Company" (*id.* at 27). (ECF 12-2, "Answer," ¶¶ 10–11.)

> The Policy provides, in relevant part:
>
> We will pay on any Insured Person's behalf all Non-Indemnifiable Loss the Insured Person is legally obligated to pay resulting from a Claim for a Wrongful Act first made against that Insured Person during the Policy Period or Extended Reporting Period.
>
> We will pay on the Company's behalf all Indemnifiable Loss any Insured Person is legally obligated to pay resulting from a Claim for a Wrongful Act first made against that Insured Person during the Policy Period or Extended Reporting Period.
>
> We will pay on behalf of the Company all Loss resulting from a Claim for a Wrongful Act first made against the Company during the Policy Period or Extended Reporting Period.

(ECF 12-1 at 26 (emphasis in original).)

---

[1] The following facts are taken from the pleadings, the Policy, and the materials submitted with the parties' cross-motions.

The Policy defines "Wrongful Act" to include "any actual or alleged act, omission, error, misstatement, misleading statement, neglect, [or] breach of duty" by an Insured Person "in his or her capacity as an Insured Person" or "by reason of his or her status as an Insured Person." (*Id.* at 27–28.) "Loss" means "compensatory damages, settlements, judgments (including pre-judgment and post-judgment interest) and Defense Costs," excluding "any matter which may be deemed uninsurable." (*Id.* at 32.) An endorsement to the Policy removes punitive damages from Loss. (*Id.*, Amend Definition of Loss – Remove Punitive Damages Endorsement.) "Defense Costs" means "any reasonable and necessary legal fees, costs and expenses incurred in investigating, defending or appealing any Claim." (*Id.* at 13.)

Two Policy exclusions are relevant here. First, the Contract Exclusion states that SNIC "will not pay Loss resulting from any Claim made against the Company … for any actual or alleged breach by the Company of an express or implied contract, except to the extent the Company would have been liable in the absence of such contract." (*Id.* at 29.) Second, a Personal Profit Exclusion bars coverage for Loss "brought about or contributed to by … You gaining any personal profit, financial advantage or remuneration to which You were not legally entitled," though that exclusion does not take effect "unless and until there is a final, non-appealable adjudication" on the point. (*Id.* at 16.) The Policy also has an Allocation provision: where a Claim "includes both covered and uncovered matters," 100% of Defense Costs incurred by Insureds afforded coverage are allocated to covered Loss. (*Id.* at 19.)

The coverage dispute arises out of a lawsuit filed against Policyholders by Electronic Merchant Systems LLC ("EMS"). EMS alleged that it provided credit card processing services to SearchFinder under a Merchant Application/Agreement (the "Agreement"). (Certification of Andrew S. Turkish, Esq., "Turkish Cert.," Ex. E, ¶ 3; Certification of Anthony Bartell, "Bartell

3

Cert.," Ex. A.)  Under the Agreement, SearchFinder was to pay all costs and fees associated with those services, including chargeback costs—amounts EMS had advanced to SearchFinder for transactions that SearchFinder's customers later rejected.  (Turkish Cert., Ex. E, ¶¶ 3, 6.)

EMS alleged that Fomin personally guaranteed "full and prompt payment of any and all amounts owed to EMS and the performance of all of [SearchFinder's] obligations under the Agreement."  (*Id.* ¶¶ 4–5.)  The guarantee instrument is titled "PERSONAL GUARANTY FROM OWNER/OFFICER" and states that the guaranty "is made as part of a transaction that is solely for business and commercial purposes."  (*Id.* ¶ 4; Bartell Cert., Ex. A, at 2.)  Fomin was not permitted to sign the Agreement with a corporate title designation.  (Turkish Cert., Ex. E, ¶ 5.)

On April 17, 2023, EMS filed a complaint against SearchFinder and Fomin (collectively, "Policyholders") in the Court of Common Pleas of Cuyahoga County, Ohio (the "Underlying Action").  (Turkish Cert., Ex. E.)  SearchFinder removed the case to the United States District Court for the Northern District of Ohio, Eastern Division, Case No. 1:23-cv-01012.  (Compl. ¶ 17.)

The complaint in the Underlying Action (the "Underlying Complaint") contained three counts.  Count I alleged that Policyholders "failed to liquidate the balance due and owing EMS" in the amount of approximately $435,378.93; Count I does not reference the Agreement.  (Turkish Cert., Ex. E, ¶¶ 8–12.)  Count II alleged that Policyholders "have been unjustly enriched at the expense of EMS" and that Policyholders "are in breach of the Agreement."  (*Id.* ¶¶ 15–16.)  Count III alleged fraud.  EMS voluntarily dismissed Count III without prejudice on June 2, 2023. (Turkish Cert., Ex. F.)

4

Policyholders answered, denied EMS's claims, and asserted affirmative defenses and counterclaims, including for breach of contract, fraudulent misrepresentation, fraudulent inducement, and unjust enrichment. (Ex. C, at 5–7, 18–23.)

The Underlying Action was resolved by settlement. According to the settlement agreement in the record, Policyholders agreed to pay $250,000 to EMS in ten monthly installments in exchange for dismissal of the action. (Turkish Cert., Ex. G.) The parties describe the timing of the settlement somewhat differently in their submissions, but it is undisputed that Policyholders failed to make the first installment payment. EMS moved to enforce, the court granted the motion, and judgment was entered against Policyholders. (Turkish Cert., Exs. H, I.) The settlement did not allocate the payment among the various claims and defenses. (Pl. Opp. at 5.)

SearchFinder notified SNIC of the Underlying Action and sought coverage. (Compl. ¶¶ 22–23.) By letter dated August 4, 2023, SNIC denied coverage on three grounds: the Underlying Complaint did not allege a Wrongful Act, it did not allege insurable Loss, and the contract exclusion barred coverage for SearchFinder. (Turkish Cert., Ex. J, at 9.) Policyholders' counsel wrote to SNIC on November 28, 2023, disputing the denial. (Turkish Cert., Ex. K.) SNIC's counsel reiterated the denial on December 5, 2023. (Turkish Cert., Ex. L.)

Policyholders filed this action on October 31, 2024. (Compl.) They assert a claim for breach of contract and seek a declaratory judgment that SNIC must provide coverage under the Policy. SNIC answered and filed a Counterclaim on December 10, 2024, seeking declarations of no coverage. (ECF 12.) Policyholders answered the Counterclaim on January 9, 2025. (ECF 16.)

On March 7, 2025, both sides filed dispositive motions. Policyholders moved for partial summary judgment, seeking reimbursement of their defense costs and an award of counsel fees under New Jersey Court Rule 4:42-9(a)(6). (Pl. Mot.) SNIC moved for judgment on the pleadings

5

under Rule 12(c), seeking dismissal of Policyholders' claims and judgment on Counts I through III of its Counterclaim.  (Def. Mot.)  The parties filed oppositions on April 7, 2025 (Def. Opp.; Pl. Opp.), and replies followed.  The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

## II.    LEGAL STANDARD

### a.  Judgment on the Pleadings

The standard under which the Court must analyze a Rule 12(c) motion for judgment on the pleadings is the same as the standard as a motion to dismiss under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(h)(2); *see also Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."  (*Id.* at 789.)

### b.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d

Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." (*Id.* at 325.)

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).  Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III.    ANALYSIS

#### a.  Insurance Interpretation Generally

The Court begins its analysis by outlining the basic principles for interpreting insurance policies.  The interpretation of an insurance policy is a question for the Court to decide as a matter of law.  *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 510 (D.N.J. 2008).  "Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)).  "In assessing the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (citing *Chubb Custom Ins. Co v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)).  "If the language is clear, that is the end of the inquiry." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270.  "[I]n the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Id*. (internal quotation marks and citation omitted).

"When an ambiguity exists, courts should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600,

605 (N.J. 2008) (quoting *Performance Ins. Co. v. Jones*, 887 A.2d 146, 152 (N.J. 2005)); *see Memorial Props.*, LLC, 46 A.3d at 532 ("The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolves in favor of the insured.") (internal quotation marks and citations omitted). Still, "courts will not manufacture an ambiguity where none exists" and "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (internal quotation marks and citations omitted).

### b.  Motion for Judgment on the Pleadings

In the Motion for Judgment on the Pleadings, Defendant SNIC argues that the Court should find in its favor because: (1) coverage for the Underlying Action is precluded by the Contract Exclusion under the Policy; (2) the Underlying Action was premised on actions taken or not taken by Fomin in his personal capacity, not in his capacity as a director or officer of SearchFinder; and (3) the Underlying Action merely alleges failure to pay a contracted-for sum of money rather than a "Loss" resulting from a "Wrongful Act" as those terms are defined in the Policy. (Def. Mot. at 1-2.) The Court addresses each argument in turn.

### i.  Contract Exclusion

As described *supra*, the Underlying Action alleged three counts against SearchFinder and Fomin. (*See generally* ECF 23-8.) Count I alleges that SearchFinder and Fomin "received funds from EMS for credit card transactions[,]" and that "[d]espite repeated demands, Defendants have failed to liquidate the balance due and owing EMS." (*Id.* ¶¶ 9, 12.) Count II alleges that "Defendants are in breach of the Agreement with payment due in the amount of approximately $435,378.93." (*Id.* ¶ 16.) Count III, labeled "FRAUD[,]" alleges that "EMS was induced to

advance Defendants money for alleged valid credit card transactions through the fraudulent acts and/or misrepresentations of Defendants." (*Id.* ¶ 21.)

Here, SNIC argues that the breach of contract claim in Count II triggers the Contract Exclusion in the Policy, which excludes coverage "for any actual or alleged breach by the Company of an express or implied contract, except to the extent the Company would have been liable in the absence of such contract." (ECF 12-1 at 29.)  In SNIC's view, the Contract Exclusion applies even though Counts I and III sound in tort, because SNIC characterizes Count I as a claim for unjust enrichment, which is quasi-contractual or impliedly contractual in nature, and SNIC notes that the fraud claim is premised on Policyholders' alleged inducement of EMS to enter the agreement in the Underlying Action.  (Def. Mot. at 12-13.)  SNIC supports its argument with respect to the quasi-contractual nature of Count I with a litany of cases from New Jersey state and federal courts holding that unjust enrichment claims imply contracts that can be excluded from insurance coverage by policy exclusions like the one at issue here.  (*Id.* at 13.)  Notably, SNIC offers no case law in support of its argument concerning the fraud count in the Underlying Action. (*Id.*)

In their Opposition, Policyholders argue that Count I of the Underlying Action is better characterized as alleging conversion against SearchFinder and Fomin rather than unjust enrichment, and that conversion, as a tort with no quasi-contractual flavor, falls outside the Contract Exclusion in the Policy under cases such as *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192 (3d Cir. 2004) and *Foodtown Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 412 F. App'x 502 (3d Cir. 2011).  (Pl. Opp. at 10-11.)  In *Houbigant*, 374 F.3d at 202-203, the Third Circuit held that a contract exclusion in an insurance policy did not apply to tort claims pleaded against the insured.  In *Foodtown*, 412 F. App'x at 506, the Third Circuit found that a contract exclusion did

not apply to claims of breach of fiduciary duty against the insured, because the alleged fiduciary duty at issue in the underlying action did not arise from a contractual relationship between the insured and the underlying plaintiff.

In its Reply, SNIC argues that Policyholders ignore "the clear definition of 'Claim' in the Policy, which is a civil proceeding and is not the causes of action contained therein." (Def. Reply at 2.) SNIC notes that many courts around the country have "expressly rejected Plaintiffs' attempt to split the Claim (i.e. the Underlying Action) into multiple 'Claims' where the policy defines 'Claim' as a civil proceeding[,]" but they notably do not cite any binding precedent from the state of New Jersey or the Third Circuit conforming to these courts' approach. (*Id.* at 3.) SNIC then asserts that any duty Policyholders owed to pay or reimburse EMS arose from the Agreement. (*Id.* at 4.) In SNIC's view, this fact distinguishes this case from *Houbigant* and *Foodtown*, because the courts in those cases premised their findings that the contract exclusions did not apply on the fact that, in each case the claims against the insureds arose from duties the insureds owed to the underlying plaintiffs, and in each case these duties existed independently of any contracts between the underlying parties. (*Id.*)

In the context of insurance disputes premised on underlying complaints against insured parties, it has been established in New Jersey that "if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved." *Flomerfelt*, 202 N.J. at 444. This principle cuts against SNIC's argument that the Court should read the counts in the Underlying Complaint as a single unified "Claim." In New Jersey, it appears that a civil action is construed to be composed of its various counts or causes of action, and each count or cause of action should be given its due consideration when evaluating whether it is covered under the policy

11

at issue.  Considering Count I of the Underlying Complaint, Policyholders' argument that the proper cause of action is conversion is equally as compelling as SNIC's argument that the proper cause of action is unjust enrichment.  Count II clearly sounds in breach of contract.  Because Count III is a claim for fraud, and fraud is a tort not subject to the Contract Exclusion, the Court need not decide whether Count I is a tort claim or a quasi-contract claim.  "In general, insurance policy exclusions must be narrowly construed[.]"  *Id.* at 442 (quoting *Am. Motorists Ins. Co. v. L–C–A Sales Co.,* 155 N.J. 29, 41 (1998).

Reading the Contract Exclusion narrowly, there is nothing that indicates that the Exclusion was meant to apply to fraud claims.  The Exclusion simply states, "We will not pay Loss resulting from any Claim made against the Company for any actual or alleged breach by the Company of an express or implied contract, except to the extent the Company would have been liable in the absence of such a contract."  (ECF 12-1 at 29.)  SNIC correctly notes that Policyholders owed EMS no duties independent of the underlying Agreement, but the Contract Exclusion does not include the broad "arising out of" language that complicated the court's analysis in *Houbigant*.  *See, Houbigant*, 374 F.3d at 202-203 (noting that "Federal's CGL policy expressly excludes coverage for "advertising injury *arising out of* breach of contract[,]" and finding that "[a]lthough the relationship between Houbigant and the Insureds is contractual, the actions of the Insureds were independently tortious.")  Here, EMS simply claims that the Loss for the purpose of coverage under the Policy resulted from fraud, rather than, or in addition to, breach of contract.  For these reasons, the Contract Exclusion does not apply to Count III of the Underlying Complaint.

### ii.  Defendant Fomin's Capacity

SNIC next argues that EMS did not sue Plaintiff Fomin in his capacity as a director and officer of SearchFinder because "EMS alleged that Fomin is liable under the Agreement and in

12

tort because he *personally* guaranteed full and prompt payment of any and all amounts owed to EMS and the performance of all of SearchFinder's obligations under the Agreement[.]" (Def. Mot. at 15.)  SNIC notes that in *Am. Guarantee & Liab. Ins. Co. v. Falk*, one court in this District applying New Jersey law found no coverage where the insured was sued in his capacity as an employee of a law firm as opposed to his capacity as a solo practitioner.  No. 10-cv-02165, 2011 WL 4499282, at *4 (D.N.J. Sept. 27, 2011) ("it is clear that American Guarantee has no duty to defend Falk since Falk is being sued for conduct outside his capacity as a solo practitioner.")  As such, in SNIC's view, "Fomin cannot meet his burden to demonstrate that the Underlying Action falls within the scope of coverage of the Policy." (Def. Mot. at 16.)

In the Opposition, Policyholders argue that "SNIC incorrectly conflates (i) the underlying issue of plaintiff Fomin's alleged personal responsibility for the guarantee, with (ii) the coverage issue of whether plaintiff Fomin entered into the guarantee to fulfill his duties as an Insured Person." (Pl. Opp. at 13.)  They also note that the Agreement between Policyholders and EMS states that "Guarantor(s) acknowledge(s) and agree(s) that this guaranty is made as part of a transaction that is solely for business and commercial purposes and is not for personal, family, or household purposes." (*Id.*, citing Bartell Cert., Ex. A at 2.)  Policyholders also seek discovery on this point and argue that "the issue of whether plaintiff Fomin acted as an Insured Person constitutes […] a question of fact for the jury." (*Id.*)

In the Reply, SNIC argues that "[i]t is irrelevant that the Agreement stated that the guaranty executed by Fomin was 'not primarily for personal, family, or household purposes' or that EMS characterized the Agreement […] as a 'Guaranty from Owner/Officer[.]'" (Def. Reply at 7.)  What matters to SNIC is that "Fomin would have had no liability for any obligations owed under the Agreement but for his personal guaranty of EMS's obligations under the Agreement." (*Id.*)

13

To reiterate, as relevant here, the Policy defines "Wrongful Act" as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect, [or] breach of duty by any Insured Person in his or her capacity as an Insured Person." (ECF 12-1 at 27–28.) The Policy defines "Insured Person" in relevant part as "all natural persons who were, now are, or will be (a) engaged and directed by the Company to provide labor or service […] and, (b) directors, officers, management committee members, management board observers, advisory committee members, members of the board of managers or natural person general partners of the Company." (ECF 12-1 at 27.) The Underlying Complaint refers to the guaranty at issue as the "GUARANTY FROM OWNER/OFFICER." (Turkish Cert., Ex. E, ¶¶ 4-5.) The Underlying Agreement refers to the guaranty as a "PERSONAL GUARANTY FROM OWNER/OFFICER." (Turkish Cert., Ex. M at 3.) These terms make it clear that EMS sued Fomin in his capacity as an Insured Person, because he was acting in his role as a director/officer of SearchFinder in executing the guaranty.

### iii.  Loss

SNIC's final argument is that "[e]ven in the absence of a breach-of-contract exclusion, 'courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay.'" (Def. Mot. at 17, citing Eric Mills Holmes, *Holmes' Appleman on Insurance* 2d § 146.6 (2003).) SNIC asks the Court to adopt Judge Posner's ruling in *Krueger Int'l, Inc. v. Royal Indem. Co.*, 481 F.3d 993, 996 (7th Cir. 2007) that "insurance policies are presumed not to insure against liability for breach of contract." (*Id.*)

In the Opposition, Policyholders argue that SNIC's position renders meaningless both "the exception to the exclusion which allows coverage for breach of contract claims where, as here, Policyholder's 'would have been liable [to EMS] in the absence of such contract[,]" and "the

14

express carve-out from the exclusion of a contract breach committed by an Insured Person, such as plaintiff Fomin." (Pl. Opp. at 14-15.) Policyholders cite cases noting that New Jersey law prohibits courts from interpreting insurance policies in ways that render the language of the policy meaningless, and they also note that, in *Krueger*, Judge Posner applied Wisconsin law, not New Jersey law. (*Id.* at 15.) In the Reply, SNIC largely reiterates the arguments described in the previous paragraph.

SNIC's argument here fails for the same reasons that their first argument regarding the Contract Exclusion fails: the Underlying Complaint asserts claims for recovery that do not rest on breach of contract. The Policy defines Loss as "compensatory damages, settlements, judgments (including pre-judgment and post-judgment interest) and Defense Costs," excluding "any matter which may be deemed uninsurable." (ECF 12-1 at 32.) The parties do not dispute that Policyholders settled the case, and it is beyond dispute that the Underlying Action sounded in both breach of contract and tort. To the extent that the Underlying Settlement related to the tort claims against Policyholders, the Court sees no reason why such settlement should not be construed as a Loss within the scope of the Policy.

For all the reasons articulated above, SNIC's Motion for Judgment on the Pleadings is **DENIED**.

### c. Motion for Summary Judgment

The Court's opinion on the Motion for Judgment on the Pleadings largely decides Policyholders' Motion for Summary Judgment in Policyholders' favor, as most of the arguments on the Motion for Summary Judgment mirror those on the Motion for Judgment on the Pleadings.[2]

---

[2] The Court finds that no genuine dispute of material fact exists in this case. While the parties dispute each others' characterizations of the Policy and their positions relative to it, they agree on the material facts, such as the existence of the Underlying Action and the Underlying Settlement,

15

The only remaining issue for the Court to consider is whether New Jersey Court Rule 4:42-9(a)(6) requires an award of attorneys' fees and costs of suit for Policyholders' prosecution of this action against SNIC.  The Rule states that "No fee for legal services shall be allowed in the taxed costs or otherwise, except in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."  The Rule thus leaves the determination of whether or not to award Policyholders attorneys' fees and costs of suit to the Court's discretion.  "The policy underlying Rule 4:42–9(a)(6) is to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection."  *Sears Mortgage Corp. v. Rose,* 134 N.J. 326 (1993) (internal citations and quotations omitted).  "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy."  *Liberty Village Assocs. v. West American Ins. Co.,* 308 N.J. Super. 393 (1998).

Here, as in *Baughman v. U.S. Liab. Ins. Co.*, 723 F. Supp. 2d 741, 747 (D.N.J. 2010), SNIC "asks the Court to exercise its discretion and deny attorneys' fees to Plaintiffs because Defendant denied coverage in good faith" inasmuch as its decision to deny coverage was "based upon a reasonable interpretation of the plain language of the Policy and the complaint filed in the Underlying Action."  (Def. Opp. at 17.)  The Court finds that Policyholders are entitled to attorneys' fees and costs of suit in their prosecution of this litigation because public policy and New Jersey law counsel in favor of such a finding where, as here, the clear and unambiguous

---

and the plain terms of the Policy.  A side-by-side review of their statements of undisputed fact reveals as much.

language of an insurance policy entitles an insured party to coverage, and yet the insured party is forced to resort to a judicial forum to secure the coverage contracted for.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant SNIC's Motion for Judgment on the Pleadings is **DENIED** and Plaintiffs/Policyholders SearchFinder, Inc. and Vasily Fomin's Motion for Summary Judgment is **GRANTED**.  An appropriate order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:  Clerk
cc:    Cari Fais, U.S.M.J.
       Parties

17